IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ESTRALITA L. OLIVEIRA,

        Plaintiff,

v.                                                                                              No.  1:19-cv-00528-JB-KRS

ANDREW SAUL,
Commissioner of the
Social Security Administration,

        Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Plaintiff seeks review of the Commissioner's determination that she is not entitled to disability benefits.  On September 27, 2019, in accordance with 28 U.S.C. § 636(b)(1)(B), (b)(3), this case was referred to United States Magistrate Judge Kevin R. Sweazea to conduct any necessary hearings and to recommend an ultimate disposition.  *See Order of Reference*, Doc. 16.  Having considered Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 19), the Commissioner's response in opposition (Doc. 23), and Plaintiff's subsequent reply (Doc. 24), the undersigned RECOMMENDS that the Court GRANT Plaintiff's motion for the reasons set forth below.

## I.  PROCEDURAL BACKGROUND

On March 28, 2016, Plaintiff filed applications for disability benefits, alleging that she had been disabled since February 17, 2016, due to leg problems, neck problems, left shoulder problems, hip problems, and stress.  (AR 206).  After denials in earlier agency proceedings (AR 115, 116), Plaintiff was granted a hearing before administrative law judge ("ALJ") Matthew Kawalek.

In the written decision that followed, ALJ Kawalek engaged in the required five-step disability analysis,[1] first finding that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 17, 2016.[2]  (AR 16).  At step two, ALJ Kawalek found that Plaintiff has the severe impairments of degenerative disc disease ("DDD") of the cervical spine, DDD of the lumbar spine with radiculopathy, mild osteoarthritis of the left hip, carpal tunnel syndrome of the left upper extremity, left shoulder impingement/tendonitis, and obesity. (*Id.*).  He also found that Plaintiff has non severe mental impairments, including major depressive disorder and somatoform disorder.  (AR 18).  At step three, the ALJ determined that none of Plaintiff's impairments, whether alone or in combination, met or medically equaled the severity of a listed impairment.  (AR 21).

ALJ Kawalek next assessed Plaintiff's residual functional capacity ("RFC"),[3] finding that Plaintiff has the RFC to:

> perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) meaning she can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. The claimant can stand and/or walk for six hours of an eight-hour workday, and she can sit for six hours of an eight-hour workday. She can never climb ladders, ropes, or scaffolds, and she can frequently stoop, kneel, or crawl. The claimant can only occasionally crouch or climb ramps or stairs. She can frequently reach with the bilateral upper extremities, and she can frequently handle, finger, and feel with the left upper extremity. The claimant can have no exposure to hazards.

(AR 23).

---

[1] *See* 20 C.F.R. § 404.1520 (outlining the five-step analysis).
[2] The ALJ also determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2021.  (AR 16).
[3] The RFC gauges "what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).  *See also* 20 C.F.R. § 404.1545(a)(1).

ALJ Kawalek then proceeded to step four where, with the help of a vocational expert ("VE"), he determined that Plaintiff was able to perform her past relevant work as a cashier/sales clerk. Accordingly, ALJ Kawalek determined that Plaintiff was not disabled. (AR 30).

The ALJ's decision became final when, on April 8, 2019, the Appeals Council denied Plaintiff's request for review. (AR 1-5). *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000) (explaining that if the Council denies a request for a review, the ALJ's opinion becomes the final decision). Plaintiff now asks this Court to reverse and remand the Commissioner's decision.

## II. STANDARD

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). *See also* 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). The Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262. "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted). Even so, it is not the function of the Court to review Plaintiff's claims de novo, and the Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

### III.  ANALYSIS

In support of her request for reversal and remand, Plaintiff argues that the ALJ (1) erred in determining that she was able to perform her past relevant work at step four of his analysis; and (2) failed to account for her subjective allegations of pain and psychological symptoms, resulting in a flawed RFC determination.

### The ALJ's Step Four Determination

During Plaintiff's hearing before ALJ Kawalek, Plaintiff testified as to her past relevant work as a cashier at Walmart.  Plaintiff explained that she stopped working due to a job-related injury, and that she is no longer able to do the lifting, standing, or walking required by the job.  (AR 50-51).  VE Jamie Massey also provided testimony at the hearing.  Per the Dictionary of Occupational Titles ("DOT"), the VE classified Plaintiff's Walmart position as "cashier, sales clerk," (DOT 290.477-014), "light work, with an SVP of 3."  (AR 67).  She then testified that a hypothetical individual with Plaintiff's RFC would be capable of performing the requirements of this occupation.  (AR 68).  ALJ Kawalek did not question VE Massey concerning the impact the RFC limitation that "… she can frequently handle, finger, and feel with the left upper extremity" would have on performing past relevant work as a cashier/sales clerk.  (AR 68 – 71).  Additionally, neither ALJ Kawalek nor VE Massey mentioned Plaintiff's ability to conduct those actions with her right upper extremity.  Ultimately, as noted above, ALJ Kawalek found VE Massey's testimony to be consistent with the DOT and determined that Plaintiff was able to return to her past relevant work as a cashier/sales clerk.  (AR 30).

Plaintiff contends that ALJ Kawalek erred in making this determination.  Here, Plaintiff sites to *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996), for the proposition that, when determining whether a claimant is capable of performing her past work, the ALJ must (1)

evaluate the claimant's physical and mental RFC; (2) determine the physical and mental demands of the claimant's past relevant work; and (3) determine whether the claimant is able to meet those demands.  *Winfrey*, 92 F.3d 1017 at 1023; (Doc. 19, p. 11).

In connection with determining whether Plaintiff is able to meet the demands of cashier/sales clerk, Plaintiff argues that "it remains unclear how [she] was able to perform her past relevant work as a cashier," (Doc. 19, p. 12), considering her severe impairments of carpal tunnel syndrome and left shoulder impingement/tendonitis; opinion evidence that assessed her to have diminished grip strength and suggested that she should be limited to occasional manipulative activities and occasional public contact; and her own hearing testimony regarding her inability to perform her past work. (*Id.* at 12-13).  Plaintiff then points out that the ALJ neither questioned the VE about the manipulative demands of the occupation of cashier, nor discussed the manipulative demands of the job with Plaintiff.  Instead, Plaintiff avers, the ALJ "simply…relied on [her] work history and the vocational expert's testimony" in reaching his step four determination. (*Id.* at  14).  Plaintiff concludes that, because "ALJ Kawalek failed his duty of inquiry and factual development at phase two" of the *Winfrey* analysis, he "could not proceed to phase three to find that [Plaintiff] was able to meet the physical demands of her past relevant work." (*Id.*).[4]

The ALJ discussed how he reached his findings regarding Plaintiff's physical functional capacity, (AR 24-30), and explained how he considered those findings when analyzing Plaintiff's ability to return to work. (AR 30).  The requirements of cashier/sales clerk, as set forth in the DOT, include:

---

[4] Plaintiff also notes, seemingly as an aside, that the ALJ rejected all of the opinion evidence of record, leaving one to speculate as to the evidence underlying his decision.  She does not, however, develop this argument beyond one sentence and a few citations to seemingly unrelated concepts. (Doc. 19, p. 14).

> Obtains or receives merchandise, totals bill, accepts payment, and makes change for customers in retail store such as tobacco shop, drug store, candy store, or liquor store: Stocks shelves, counters, or tables with merchandise. Sets up advertising displays or arranges merchandise on counters or tables to promote sales. Stamps, marks, or tags price on merchandise. Obtains merchandise requested by customer or receives merchandise selected by customer. Answers customer's questions concerning location, price, and use of merchandise. Totals price and tax on merchandise purchased by customer, using paper and pencil, cash register, or calculator, to determine bill. Accepts payment and makes change. Wraps or bags merchandise for customers. Cleans shelves, counters, or tables. Removes and records amount of cash in register at end of shift. May calculate sales discount to determine price. May keep record of sales, prepare inventory of stock, or order merchandise. May be designated according to product sold or type of store.
>
> STRENGTH: Light Work - Exerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

*See* 290.477-014 SALES CLERK, DICOT 290.477-014.

It appears that the demands of being a cashier/sales clerk as detailed in the DOT may exceed Plaintiff's assessed capabilities. ALJ Kawalek found Plaintiff's carpal tunnel syndrome of the left upper extremity and left shoulder impingement/tendonitis to be severe impairments (AR 16). ALJ Kawalek asked the VE a hypothetical question consistent with the RFC fashioned by the ALJ. However, ALJ Kawalek did not explore with the VE the impact Plaintiff's severe carpal tunnel syndrome of the left upper extremity and left shoulder impingement/tendonitis would have on Plaintiff's ability to perform that past relevant work. That inquiry would have been particularly important considering the job demands requiring strength to move 20 pound

objects occasionally (up to 1/3 of the time) and ten pound objects frequently (up to 2/3 of the time).  (*Id.*).  As explained in *Bowman v. Astrue*, an ALJ must address how a claimant's limitations impact his or her ability to perform past relevant work, and failure to do so is legal error.  511 F.3d 1270, 1273 (10th Cir. 2008) (finding ALJ erred by failing to inquire of VE how claimant's limited use of left hand would affect her ability to perform her past relevant work).

It is also interesting to note that, inexplicably, notwithstanding the finding of severe impairments to Plaintiffs **left** shoulder and wrist/hand, ALJ Kawalek fashioned an RFC that found Plaintiff could "… frequently reach with the bilateral upper extremities, and she can frequently handle, finger, and feel with the left upper extremity."  (AR 23).  ALJ Kawalek does not make a finding that Plaintiff could conduct similar manipulations with her right arm and hand.  (*Id.*).  Furthermore, ALJ Kawalek does not discuss the interaction between his finding of severe impairments of carpal tunnel syndrome of the left upper extremity and left shoulder impingement/tendonitis with his RFC determination that Plaintiff could "… frequently reach with the bilateral upper extremities, and she can frequently handle, finger, and feel with the left upper extremity." (*Id.*).  While administrative law judges are required  "to ask only about the effect of those limitations ultimately assessed," *Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016), the ALJ was obligated to make a record from which the Court could assure that substantial evidence supported his decision.  *See Winfrey*, 92 F.3d at 1025 (explaining ALJ's step four findings must all be made on the record); SSR 82-62, 1982 WL 31386, at *4,  ("[ALJ's] decision must contain … specific findings of fact" regarding step four findings); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the

correct legal standard."). Based upon the ALJ's failure to make the inquiry noted above, the Court is not able to find that the ALJ decision is supported by substantial evidence.

Plaintiff also argues that ALJ Kawalek did not, but should have proceeded on to step five of the sequential evaluation process, and if he had done so, would have found Plaintiff disabled. (Doc. 19, p. 4-5). Plaintiff's argument is based upon VE Massey's testimony that there were no transferrable skills from Plaintiff's past relevant work (AR 69–70), Ms. Oliveira was 60 years old at the alleged onset date of February 17, 2016 (AR 73), had a general equivalency diploma (AR 55), and had previously worked at semi-skilled levels (AR 68). Therefore, Plaintiff argues ALJ Kawalek would have found Plaintiff disabled at step five according to the Medical-Vocational Guidelines, Rule 202.06, at the light exertional level, and Rule 201.06, at the sedentary exertional level. (Doc. 19, p. 5). However, because the ALJ did not reach this step, the Court declines to address this hypothetical argument.

## The ALJ's Evaluation of Plaintiff's Subjective Allegations

Plaintiff also contends that ALJ Kawalek failed to consider properly her subjective complaints of pain and psychologically based symptoms. Again, Plaintiff's argument is not entirely clear. First, Plaintiff discusses her major depressive disorder and somatoform disorder and argues that the ALJ improperly considered the related evidence at step two of his evaluation. (Doc. 19, p. 16). Then, in a somewhat disjointed and contradictory fashion, Plaintiff states that, "even though ALJ Kawalek reviewed [her] mental health history at Step Two, he completely omitted any discussion of her mental health issues within his subjective-allegations analysis later within his decision." (Doc. 19, p. 18). Plaintiff claims that, but for this omission, she "very likely would have been found disabled." (Doc. 19, p. 19). Finally, Plaintiff argues that the ALJ

failed to consider the combined effects of her somatoform disorder and physical impairments in violation of *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  The Court disagrees.

When assessing a claimant's RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work."  20 C.F.R. § 404.1545(a)(4). This assessment is based on all of the evidence of record, including descriptions offered by the claimant and other individuals regarding the limiting effects of the claimant's impairment(s) and symptoms.  20 C.F.R. § 404.1545(a)(3).  While the "ALJ is not required to discuss every piece of evidence[,]" *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996), he "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Id.* at 1010.  *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (explaining that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence").  The same standard is applied to assess a claimant's subjective allegations.  *See* SSR 16-3p, 2017 WL 51803024 (October 25, 2017).

In the case at bar, ALJ Kawalek thoroughly discussed Plaintiff's depressive and somatoform disorders at step two of his analysis, and determined that neither causes more than minimal limitations.  (AR 18-21).  To this end, the ALJ noted Plaintiff's subjective complaints and compared them against the medical evidence of record, opinion evidence, and Plaintiff's own self-reports of daily living.  (*Id.*).  *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (explaining that an ALJ must "clearly and affirmatively" link his findings to substantial evidence).  He then specifically stated that, even though Plaintiff's mental impairments are not severe, he "considered all medically determinable impairments and associated limitations in formulating the RFC." (AR 21).  While the ALJ may not have provided a second rendition of his

findings in regard to Plaintiff's non-severe impairments, "[w]here, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ 'at [his] word.'" *Wall*, 561 F.3d at 1070.

### IV.  CONCLUSION

**IT IS, THEREFORE, RECOMMENDED** that the Court **GRANT** Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 19).

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension of time must be filed in writing no later than seven (7) days from the date of this filing. A party must file any objections with the Clerk of the District Court within the fourteen (14) day period, together with any period for which an order is entered granting an extension of time, if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE